COMMISSIONER OF INTERNAL REVENUE
v. THE HUB, Inc.
No. 3509.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1934.

John G. Remey, Sp. Asst. to Atty. Gen. (Sewall Key and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and Owen W. Swecker, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

Kent B. Hall and Charles F. Paul, Jr., both of Wheeling, W. Va., for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving deficiencies in income tax for the fiscal years ended January 31, 1927, 1928, and 1929, in the amounts of $37.12, $601.87, and $1,004.69, respectively. The decision of the Board of Tax Appeals is reported in 26 B. T. A. 1201.

The question presented is whether amounts paid by the respondent during the years in question, on account of its subscription to capital stock of the Ohio Valley Industrial Corporation, a nonprofit organization, were deductible as ordinary and necessary business expenses or were capital expenditures.

The respondent is a West Virginia corporation engaged in the clothing business with its principal office at Wheeling, W. Va.

Wheeling is located in the iron and coal district, and some ten years prior to the taxable period there began a continued decline in the sales of all classes of business in that district, due primarily to the fact that several large steel plants removed from the Wheeling district. The local coal industry was also adversely affected, and many persons were thrown out of employment. All the merchants in the district suffered approximately the same decline.

As a result of this general situation, a number of larger retail dealers of Wheeling, including the taxpayer, met with a view to devising some suitable plan for bringing new and varied industries into the Wheeling district. To effectuate this plan, a nonprofit corporation, known as the Ohio Valley Industrial Corporation, was chartered under the laws of West Virginia with a subscribed capital of $1,000,000, payable in annual installments over a period of 10 years. The corporate life was limited to 50 years. The corporation was exempt from state, county, and city taxes, and paid no charter fee.

The certificate of incorporation recites the

principal purposes as follows: "To rehabilitate and otherwise assist manufacturing plants that deserve financial and other assistance" within the Wheeling district; "to assist in locating additional manufacturing plants in the sections named; also to assist in increasing and bettering of manufacturing plants now operating therein"; and generally to authorize and conduct "such traveling, research, comparative statistics, and other study as may be deemed proper to carry the foregoing objects into effect." The charter also declares that: "This Corporation is not organized for personal gain, but only as a civic undertaking, and there shall never be any dividends declared from profits, and all profits accruing shall be placed in a surplus fund for the objects and purposes of the Corporation." It is further provided that the corporation may be dissolved "in the discretion of the directors upon the vote of a majority thereof, first making provision for payment of all debts and obligations of the Corporation."

The corporation seems to have functioned along the lines contemplated. Conditions in Wheeling were improved, due to the fact that opportunities for employment had been increased. Some 600 or 700 men were employed through the operations of the industrial corporation, and the effect of such enlarged pay rolls was reflected in the increased sales of the taxpayer.

The taxpayer subscribed for $50,000 of the stock of the said corporation, and paid in excess of $22,000 prior to the proceeding before the Board of Tax Appeals, the balance of the subcription being subject to call. During the fiscal years ended January 31, 1927, 1928, 1929, the taxpayer paid on its said stock subscriptions the amounts of $1,500, $4,500, and $5,000, respectively, which amounts were charged off as expense and deducted in reporting taxable income.

The deductions were disallowed by the Commissioner in computing the deficiencies in controversy. The Board of Tax Appeals reversed the action of the Commissioner and held that the expenditures were properly deductible.

The statute involved is the following:

Revenue Act of 1926, c. 27, 44 Stat. 9:

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 [section 981 of this title] there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity." USCA, Tit. 26, § 986 (a) (1).

Section 23 (a) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 USCA § 2023 (a), differs in no material respect from the foregoing.

Treasury Regulations 69 provides, among other things, that:

"Art. 562. Donations.—Corporations are not entitled to deduct from gross income contributions or gifts which individuals may deduct under paragraph (10) of section 214 (a). Donations made by a corporation for the purposes connected with the operation of its business, however, when limited to charitable institutions, hospitals, or educational institutions conducted for the benefit of its employees or their dependents are a proper deduction as ordinary and necessary expenses. Donations which legitimately represent a consideration for a benefit flowing directly to the corporation as an incident of its business are allowable deductions from gross income. For example, a street railway corporation may donate a sum of money to an organization intending to hold a convention in the city in which it operates, with the reasonable expectation that the holding of such convention will augment its income through a greater number of people using the cars. Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses, are not deductible from gross income."

The expense in question is not deductible, unless it is both an ordinary and necessary expense. Parkersburg Iron & Steel Co. v. Burnet, Commissioner (C. C. A.) 48 F.(2d) 163; Welch v. Helvering, Commissioner, 54 S. Ct. 8, 10, 78 L. Ed. ——, decided by the Supreme Court November 6, 1933.

An expense is not deductible under the act if claimed solely on the grounds that it is related to the business or is a benefit to it. Welch v. Helvering, Commissioner, supra; White v. Commissioner (C. C. A.) 61 F.(2d) 726; One Hundred Five West Fifty-Fifth Street v. Commissioner (C. C. A.) 42 F.(2d) 849; Newark Milk & Cream Co. v. Commis-

sioner (C. C. A.) 34 F.(2d) 854; Blackwell Oil & Gas Co. v. Commissioner (C. C. A.) 60 F.(2d) 257.

It seems to us that the expenditures here under consideration partake more of the nature of an expenditure for advertising than of a capital expenditure. The corporation organized for the purpose of promoting business in the section in which The Hub conducted its retail business was a nonprofit corporation; it being contemplated that any profits should remain in the corporation as a fund for its objects and purposes. There was an extremely slight, if any, probability that the subscriber to its capital stock would ever get back any part of the money. Such a slight possibility of a recovery is not sufficient to deprive the taxpayer of an otherwise proper deduction for expenses. Burnet v. Hutchinson Coal Co. (C. C. A.) 64 F.(2d) 275.

We are of the opinion that the example given in article 562, Treasury Regulations 69, of a donation by a street railway corporation to an organization intending to hold a convention in the city in which it operates, is decisive of the question here; certainly the expenditure made by The Hub is of the same character as that referred to in the Regulations. Donations of this character, made to Chambers of Commerce or similar organizations, have been uniformly held by the Board of Tax Appeals to be deductible as ordinary and necessary expenses. First National Bank in St. Louis v. Commissioner, 23 B. T. A. 1125; Hirsch-Weis Mfg. Co. v. Commissioner, 14 B. T. A. 796; Emery, Bird, Thayer Dry Goods Co. v. Commissioner, 20 B. T. A. 796; Simons Brick Co. v. Commissioner, 14 B. T. A. 878; First National Bank of Omaha v. Commissioner, 17 B. T. A. 1358; Matson Navigation Co. v. Commissioner, 24 B. T. A. 14; Rodeo-Vallejo Ferry Co. v. Commissioner, 24 B. T. A. 936; Old Mission Portland Cement Co. v. Commissioner, 25 B. T. A. 305.

This holding of the Board seems to have been accepted as correct, and it meets with our approval. The fact that a nonprofit corporation, rather than the usual Chamber of Commerce, was the medium used for the purpose of handling the donations or subscriptions, does not change the character of the expenditure. See American Rolling Mill Co. v. Commissioner (C. C. A.) 41 F.(2d) 314.

A clear discussion of a related question to the one here under consideration will be found in Welch v. Helvering, Commissioner, supra, where Mr. Justice Cardozo says: "Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with borderline conclusions."

We are of the opinion, considering the matter in the light of the decisions and treating the taxpayer with that consideration which is its due, that the expenditures in question were ordinarily and necessarily incurred in carrying on its business.

It is contended on behalf of the petitioner that, even if deductible, the expenditure in question would only be deductible for the year in which the subscription was made, but we cannot agree with this contention. The subscription was made with a proviso that only a certain per cent., not to exceed 10 per cent. for any one year, of the subscription, could be called or collected, and we think the expenditure for each year when made was properly deductible as an ordinary and necessary expense for that year.

The decision of the Board of Tax Appeals is accordingly affirmed.